JUDGE SULLIVAN



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SYNCA DIRECT INC.,

              Plaintiff,

-vs-

SCIL ANIMAL CARE COMPANY, and VET NOVATIONS, INC.,

              Defendants.

Civil Action No.

**COMPLAINT**

Jury trial requested

---

Plaintiff Synca Direct Inc. ("Synca") alleges the following upon information and belief:

## INTRODUCTION

1. Synca, a software producer specializing in the development and marketing of software for dentists, brings this action alleging that Defendants Scil Animal Care Company ("Scil") and Vet Novations, Inc. ("Vet Novations") tortiously interfered with Synca's prospective economic advantage under the contract between Synca and ImageLevel, a Corilus company ("ImageLevel"), a software developer that produces software for the medical, dental, and veterinary industries ("the Agreement"). Synca seeks damages to compensate it for the losses it has suffered as a result of the Defendants' improper conduct, as well as other relief to which it is entitled, including, but not limited to, reasonable attorneys' fees and related costs.

15138959v.1

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action based on diversity of citizenship, pursuant to 28 U.S.C. § 1332, because Synca is an entity organized under the laws of the state of Delware and has its principal place of business in the state of New York, Scil is a citizen of the state of Illinois, and Vet Novations is a citizen of Canada.

3. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Synca's claim occurred in this District.

## PARTIES

4. Synca is a corporation organized under the laws of the state of Delaware and licensed as a foreign corporation in the State of New York, with offices located at 1320 Route 9, Champlain, New York, 12919.

5. Scil, a corporation organized under the laws of the state of Illinois, having its principal place of business at 151 North Greenleaf Street, Gurnee, Illinois, 60031, is a provider of veterinary diagnostic equipment.

6. Vet Novations was a corporation organized under the laws of Canada, having its principal place of business in Canada. Vet Novations was acquired by Scil at some point after the events discussed below.

## FACTS

**A. The formation of the Agreement**

7. In or around 2003 or 2004, Synca and ImageLevel jointly worked on a project to improve an ImageLevel software product for the North American market. Synca

reviewed the existing software, designed improvements, and tested the results while ImageLevel wrote the code for the project.

8. Due to the success of these efforts, Synca and ImageLevel entered into the Agreement, pursuant to which Synca received the perpetual and exclusive right and license to the resultant software (the "Product") for North America.

B. **Synca's collaboration with Vet Novations and Scil**

9. In 2010, Vet Novations and Scil contacted Synca to inquire about using the Product for the veterinary market.

10. In response to Vet Novations and Scil's inquiry, Synca, at its own expense, hired two leading veterinary dentists to develop a guide to help adapt the Product to the veterinary market.

11. Synca then used the guide described above to develop the Product for the veterinary market, with ImageLevel writing the actual code. Synca and ImageLevel created a system involving both software and hardware components (the "System").

C. **Synca's 2011 agreements**

12. Although the Agreement as originally written granted Synca exclusive rights to the Product for other markets, including the veterinary market, on November 2, 2011 Synca and ImageLevel entered into an amendment to the Agreement which explicitly granted Synca rights to the Product for the veterinary market.

13. Synca also entered into an agreement with Vet Novations and Scil pursuant to which Synca granted an exclusive sublicense of the Product to Vet Novations and Scil for the veterinary market (the "Sublicense Agreement"). Under the Sublicense Agreement,

Vet Novations and Scil agreed to purchase a minimum of 120 Systems, which incorporated the Product, annually. The Sublicense Agreement was renewed on February 2013 (the "Renewed Sublicense Agreement").

14.     For the first two and a half years after execution of the Sublicense Agreement, Vet Novations and Scil's sales exceeded the annual minimum guarantees.

D.  **The Defendants' improper conduct**

15.     In October 2013, Raymond Monette, Synca's President, learned through a conversation with Xavier de Tracy, ImageLevel's General Manager, that ImageLevel, Vet Novations, and Scil were attempting to bypass Synca in its continuing efforts to distribute the Systems because they claimed that Synca's prices were too high.

16.     Upon information and belief, in a conversation with Mr. de Tracy, Larry Cochrane, the President of Vet Novations and Scil, threatened to stop purchasing the System from Synca because the price was too high. Mr. Cochrane said he wanted to either purchase the System directly from ImageLevel or search for an alternative product. Because he did not want to lose Vet Novations and Scil's business, in November of 2013, Mr. de Tracy reduced the price ImageLevel charged Synca for the software that is included in the Product and Synca agreed to reduce the price it charged Vet Novations and Scil for the System.

17.     On January 14, 2014, Synca, Vet Novations, and Scil amended the Renewed Sublicense Agreement to reflect the reduced price Vet Novations and Scil would pay Synca for the System.

18. On or about August 25, 2014, Vet Novations and Scil, without warning, advised Synca that they were purchasing a replacement for the System and the Product.

19. Synca learned that Vet Novations and Scil's replacement for the System and the Product was actually a private label version of the System and the Product which was being supplied, directly or indirectly, by ImageLevel (the "Infringing System and Product"). This was a clear and intentional violation of Synca's rights under the Agreement.

20. Vet Novations and Scil were both well aware of the existence of, and Synca's rights pursuant to, the Agreement.

21. Vet Novations and Scil intentionally and tortiously interfered with Synca's prospective economic advantage. Vet Novations and Scil's actions injured the relationship between Synca and ImageLevel because they led to ImageLevel seeking to terminate the Agreement.

22. As a result of the Defendants' improper conduct, they have been receiving profits that rightfully belong to Synca.

### COUNT 1
**(Tortious Interference with Prospective Economic Advantage)**

23. Synca repeats and realleges each and every allegation in Paragraphs 1 through 22 above as though they were set forth herein at length.

24. Vet Novations and Scil were aware that the Agreement granted Synca the perpetual and exclusive rights to the Product.

25. Despite their awareness of the terms of the Agreement, Vet Novations and Scil conspired with ImageLevel to intentionally and tortiously violate Synca's rights.

26. Synca did nothing which could conceivably be considered provocation for Vet Novations and Scil to intentionally and tortiously violate Synca's rights under the Agreement.

27. As a result of this intentional and tortious interference with prospective economic advantage, Synca has sustained, and will continue to sustain, damages in an amount to be determined at trial.

## COUNT 2
### (Unjust Enrichment)

28. Synca repeats and realleges each and every allegation in Paragraphs 1 through 27 above as though they were set forth herein at length.

29. By tortiously interfering with Synca's prospective economic advantage, the Defendants earned profits that rightfully belonged to Synca.

30. As a result of this unjust enrichment, Synca has sustained, and will continue to sustain, damages in an amount to be determined at trial.

## COUNT 3
### (Conversion)

31. Synca repeats and realleges each and every allegation in Paragraphs 1 through 30 above as though they were set forth herein at length.

32. As a result of the Defendants' tortious interference with Synca's prospective economic advantage, Synca has lost the profits associated with the sale of the Product.

33. The Defendants have dominion over Synca's lost profits and have refused to remit to Synca that amounts it is owed.

15138959v.1

34. As a result of this conversion, Synca has sustained, and will continue to sustain, damages in an amount to be determined at trial.

## COUNT 4
### (Declaration for Injunctive Relief)

35. Synca repeats and realleges each and every allegation in Paragraphs 1 through 35 above as though they were set forth herein at length.

36. As a result of the Defendants' improper conduct, as detailed at length above, Synca has sustained, and will to continue to sustain, significant damages.

37. In order to eliminate future damages, Synca seeks a declaration that Defendants: (1) are permanently enjoined from manufacturing, marketing and selling the Infringing System and Product; (2) are permanently enjoined from developing any systems using the Product in North America without the written consent of Synca; (3) identify the source and manufacturer of the Infringing System and Product; (4) provide a list of all sales of the Infringing System and Product, including price and purchaser contact information, so that Synca may pursue its specific demand for monetary damages; (5) destroy all Infringing Systems and Products; (6) agree that they will not engage in any future acts of infringement of Synca's rights, which may include entering into an amended Agreement confirming Synca's rights to the Product; and (7) agree to provide affidavits of compliance of the items in this Paragraph.

## RELIEF REQUESTED

WHEREFORE, Synca demands judgment against the Defendants as follows:

1. Judgment that the Defendants have tortiously interfered with Synca's prospective economic advantage and compensatory damages in an amount that will reimburse Synca for all damages associated with the Defendants' intentional interference;

2. Judgment that the Defendantss were unjustly enriched by their tortious interference with Synca's prospective economic advantage and compensatory damages in an amount that will reimburse Synca for all damages associated with the Defendants' unjust enrichment;

3. Judgment that the Defendants have committed the tort of conversion and compensatory damages in an amount that will reimburse Synca for all damages associated with the Defendants' conversion;

4. A declaration that Synca is entitled to the injunctive relief outlined in Paragraph 37 above;

5. Reasonable attorneys' fees and costs of suit; and

6. Any such other relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Synca hereby demands a trial by jury.

Dated: New York, New York
       March 27, 2015

Respectfully submitted,

_____
Randy M. Friedberg, Esq.
White and Williams LLP
One Penn Plaza, Suite 4110
New York, NY 10119
Phone: 212-244-9500
*Attorneys for Plaintiff Synca Direct Inc.*

15138959v.1