UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
SYNCA DIRECT, INC.,

                  Plaintiff,

v.                                                                                                            8:15-cv-794

SCIL ANIMAL CARE COMPANY, and
VET NOVATIONS, INC.,

                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
THOMAS J. McAVOY
Senior United States Judge

## DECISION and ORDER

Plaintiff commenced the instant contract action, alleging that Defendants tortiously interfered with a contract between Plaintiff and a software developer. Presently before the Court is Defendants' motion to dismiss the Plaintiff's Amended Complaint. See dkt. # 28. The Court has determined to decide the motion without oral argument.

**I.    BACKGROUND**

Plantiff Synca Direct, Inc. ("Synca"), produces software that specializes in development and marketing for dentists. Plaintiff's Amended Complaint ("Amended Complt."), dkt. # 26 at ¶ 1. Defendant Scil Animal Care Company ("Scil") is a provider of veterinary diagnostic equipment. Id. at ¶ 5. At some point after the events in question, Scil acquired Defendant Vet Novations ("Vet Novations"). Id. at ¶ 6. Vet Novations was a Canadian corporation. Id.

This case concerns allegations that Defendants interfered with a contract

between Synca and ImageLevel, a software development company that made software for the medical, dental and veterinary industries. Id. at ¶ 1. In or around 2003 or 2004, Synca and ImageLevel worked together on a project to improve an ImageLevel software product for the North American market. Id. at ¶ 7. ImageLevel wrote the code for the project, while Synca worked to review the existing software, design improvements and test the results. Id. These efforts were successful, and Synca and ImageLevel entered into a binding and valid contract ("the Agreement"). Id. at ¶ 8. In this contract, Synca obtained the perpetual and exclusive right and license to the resultant software (the "Product") in North America. Id.

At some point, Defendants contacted Synca to inquire about using the Product developed by Synca and ImageLevel in the veterinary market. Id. at ¶ 9. In response, Synca hired two leading veterinary dentists to develop a guide for adapting the Product to the veterinary market. Id. at ¶ 10. Synca then used that guide to develop a system for employing the Product in the veterinary market (the "System"). Id. at ¶ 11. ImageLevel wrote the code. Id. The System involved both hardware and software elements. Id.

Synca and ImageLevel amended their Agreement on November 2, 2011 to grant exclusive rights to the Product for the veterinary market. Id. at ¶ 12. The original Agreement had granted Synca exclusivity for other markets, including the veterinary market, but the amended Agreement made this exclusivity explicit. Id.

Synca also entered into an agrement with Vet Novations and Scil. Id. at ¶ 13. In this agreement, Synca granted Vet Novations and Scil an exclusive sublicense to the Product for the veterinary market. Id. Plaintiff's Amended Complaint calls this

2

agreement the "Sublicense Agreement." Id. Plaintiff alleges that Vet Novations and Scil were aware that Synca's right to sublicense the Product came from Synca's rights under the Agreement. Id. Vet Novations and Scil agreed to purchase a minimum of 120 Systems which incorporated the Product annually. Id. The parties renewed this sublicense in February 2013. Id. In the first two and one-half years after executing the Sublicense Agreement, the Defendants' "sales exceeded the annual minimum guarantees." Id. at ¶ 14.

In October 2013, Synca's President, Raymond Monette, spoke with Xavier de Tracy, ImageLevel's General Manager. Id. at ¶ 15. De Tracy informed Monette that ImageLevel and Defendants were attempting to bypass Plaintiff's role in distributing the Systems. Id. They claimed that Plaintiff's prices were too high. Id. Plaintiff alleges that Larry Cochrane, Defendants' President, spoke with de Tracy and threatened to stop purchasing the System form Synca because of its supposed high price. Id. at ¶ 16. Cochrane stated that he wished to either purchase the System directly from ImageLevel or search for another product. Id. Fearing the loss of Defendants' business, de Tracy reduced the price ImageLevel charged Synca for the software included in the Product, and Synca agreed to reduce the price charged to Defendants for the System. Id. The parties amended the Renewed Sublicense Agreement on January 14, 2014 to reflect the reduced price Defendants would pay Synca for the System. Id. at ¶ 17.

On or about August 25, 2014, Defendants without warning informed Synca that they would purchase a replacement for the System and the Product. Id. at ¶ 18. Synca discovered that Defendants' replacement for the System and the Product were actually

a private-label version of them. Id. at ¶ 19. ImageLevel, either directly or indirectly, supplied these replacements to the Defendants. Id. Plaintiff alleges that this use of a substitute product was 'a clear and intentional violation of Synca's rights under the Agreement. Id.

Plaintiff further alleges that Defendants were both "well aware of the existence of, and Synca's rights pursuant to, the Agreement." Id. at ¶ 20. Moreover, Plaintiff contends, Defendants "intentionally and tortiously interfered with Synca's contractual relations with ImageLevel." Id. at 21. Defendants' conduct led ImageLevel to seek to terminate the agreement. Id. Defendants are now receiving profits that should belong to Plaintiff. Id. at ¶ 22.

Plaintiff's Amended Complaint raises four Counts. Count One alleges tortious interference with contractual relations. Count Two alleges Defendants were unjustly enriched because of their interference. Count Three seeks relief for conversion. Count Four seeks an injunction that permanently enjoins Defendants from manufacturing and selling the "Infringing System and Product"; permanently enjoins Defendants from developing any systems that use the Product in North America without Synca's written consent; orders Defendants to produce a list of all sales of the infringing system and product as a means of facilitating Plaintiff's damages calculation; orders destruction of any infringing system and/or products; mandates that Defendants agree not to infringement on Plaintiff's rights in the future; and directs Defendants to submit affidavits of compliance with the Court's order.

Defendants responded to the Amended Complaint with a motion to dismiss. The parties have briefed the issues, bringing the case to its present posture.

## II.    LEGAL STANDARD

Defendants have filed a motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."  Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet does not apply to legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

## III.   ANALYSIS.

Defendants seek dismissal of each Count of the Amended Complaint on various grounds, which the Court will address as appropriate.

### A.    Tortious Interference with a Contract

Defendants first contend that Plaintiff has failed to state a claim for tortious interference with a contract.  In New York, a claim of toritious interference with a contract requires "(1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'"  Kirch v. Liberty Media Corp., 448 F.3d 388, 401 (2d Cir. 2006) (quoting Lama Holding Co. v. Smith Barney

5

Inc., 88 N.Y.2d 413, 424, 668 N.E. 2d 1370, 1375, 646 N.Y.S. 2d 76, 82 (1996)). Defendants contend that Plaintiff has failed to allege the third and fourth elements of such a claim in sufficient factual detail. Plaintiff disagrees.

### i. Breach of Underlying Contract

Defendants first argue that Plaintiff has not alleged that ImageLevel breached or terminated its agreement with Synca in more than a conclusory fashion; Defendants argue that "Synca proffers no substantive factual allegations to support its formulaic recitations." Defendant's Brief, dkt. # 28-5 at 11. Plaintiff contends that allegations that ImageLevel supplied Defendants with a "Private Label Replica" of the System and that Defendants "conspired with ImageLevel to intentionally have ImageLevel breach the Agreement" are sufficient to support a claim that ImageLevel breached its contract with Plaintiff.

Failing to allege breach of contract is fatal to a tortious interference claim. See, e.g., Brooklyn Historic Ry. Assn. v. City of New York, 126 A.D.3d 837, 841 (2d Dept. 2015) (dismissing tortious interference claim because plaintiff did not allege a breach, but only alleged a delay in the performance of the contract); AQ Asset Mgt., LLC v. Levine, 119 A.D.3d 457, 461, 990 N.Y.S.2d 465, 471 (1st Dept. 2014) (no tortious interference claim because plaintiff did not allege breach of contract); AREP Fifty-Seventh, LLC v. PMGP Assoc., L.P., 115 A.D.3d 402, 402-403, 981 N.Y.S.2d 406, 407-408 (1st Dept. 2014) (dismissing tortrious interference claim because "plaintiff does not allege that defendant procured a breach of contract by plaintiff's contractor.").

This matter concerns software that Plaintiff's Amended Complaint alleges Synca and ImageLevel worked together to create software to sell in the North American

Market. Amended Complaint at ¶ 7. ImageLevel wrote the code for the software, while Synca "reviewed the existing software, designed improvements and tested the results. Id. Once the companies created the Product, ImageLevel and Plaintiff entered in a "valid and binding contract" that entitled Plaintiff to a "perpetual and exclusive right and license to" that software in North America. Id. at ¶ 8. After Defendants contacted Plaintiff about accessing that software for the veterinary market, Plaintiff investigated adapting the software, and eventually worked with ImageLevel to develop the System for that market. Id. at ¶¶ 9-11. On November 2, 2011, Synca and ImageLevel amended their agreement to grant Synca exclusive rights to the new product in the veterinary market. Id. at ¶ 12. Plaintiff and Defendants also agreed to a contract making Defendants the exclusive sublicensor of the System. Id. at ¶ 13. That contract required Defendants to purchase a certain number of Systems per year. Id.

The cost of these materials apparently became an issue, and the parties eventually renegotiated their agreement to lower costs for Defendants. Id. at ¶¶ 15-17. Still dissatisfied, Defendants eventually informed the Plaintiff that they had procured a replacement for the System that Plaintiff had supplied. Id. at ¶ 18. Plaintiff's Amended Complaint alleges that the replacement that Defendants procured was actually the same System that ImageLevel and Plaintiff had created, and was supplied "directly or indirectly" by ImageLevel to the Defendants. Id. at ¶ 19. Plaintiff contends that this provision of the System from ImageLevel to Defendants violated Plaintiff's rights under the Agreement. Id.

The question here is whether these allegations establish a breach of contract. In New York, "[t]he essential elements of a cause of action to recover damages for breach

of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." PFM Packaging Mach. Corp. v. ZMY Food Packing, Inc., 16 N.Y.S. 3d 298, 2015 N.Y. App. Div. LEXIS 6711 at *2 (2d Dept. Sept. 16, 2015). Taking all inferences in the Amended Complaint in the Plaintiff's favor, the Court finds that Plaintiff has alleged that Synca and ImageLevel had a contract that granted Plaintiff the exclusive right to the System in the veterinary market. Plaintiff also alleges that, despite this exclusive rights granted to Plaintiff, ImageLevel supplied Defendants with that System and excluded Plaintiff from the process, depriving Plaintiff of income from the Defendants. The Court finds these allegations, if proved, would demonstrate that ImageLevel breached its contract with Plaintiff. The contract was for Plaintiff to have exclusive rights to the system, and ImageLevel bypassed that right and supplied Defendants with the System directly.

Contrary to Defendants' claims that these allegations are merely conclusory, reciting the elements of a breach of contract without providing any facts to demonstrate a particular breach of contract, the Court finds that Plaintiff has alleged facts sufficient to demonstrate the particular provisions of the contract and the actions ImageLevel took that breached that contract. As such, these allegations provide sufficient facts to make the entitlement to relief on this element of the tortrious interference claim plausible. The motion must therefore be denied in this respect.

As part of their argument here, Defendants contend that Plaintiff has already admitted that Synca cannot demonstrate a breach of the underlying contract and cannot now amend the pleading to state such a claim. Defendants' brief quotes

extensively from a pre-motion conference held between the parties and the Hon. Richard J. Sullivan in the Southern District of New York.  See Exh. B to Defendants' Motion, dkt. # 28-3.  Plaintiff originally filed this action in that District, but Judge Sullivan determined that the Northern District of New York was the proper venue for the case.  At the conference, held prior to his decision to transfer the case to this district, Judge Sullivan also discussed with the parties the merits of the underlying action, including whether Plaintiff's Complaint could survive a motion to dismiss.  Judge Sullivan expressed skepticism about whether Plaintiff had stated a claim, and Defendants' brief quotes from the transcript to underscore this point and to argue that Plaintiff is bound by a supposed statement from its counsel that the Complaint did not allege a breach of contract against ImageLevel.

The Court finds this argument unpersuasive.  Judge Sullivan did not issue a ruling on the matter, and Plaintiff has since filed an Amended Complaint.  As this is a motion to dismiss and is to be decided on the pleadings, Judge's Sullivan's opinion about an earlier version of the Complaint is entirely immaterial to the issue before the Court.  Defendants' position is particularly unavailing in that Plaintiff's original complaint did not contain a claim for tortious interference with a contract.  Instead, Count One of that Complaint alleged tortious interference with prospective economic advantage, sometimes denoted as tortious interference with prospective business relations in New York.[1]  See dkt. # 1; Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132

---

[1]Indeed, the passage cited by the Defendants as proof that Plaintiff has already admitted that no breach of contract occurred came in the context of a discussion about whether Plaintiff had alleged tortious interference with a contract or tortious interference with prospective business relations, where Plaintiff did not need to plead a breach of

9

(2d Cir. 2008) (noting that tortious interference with business relations has the "alternative name" of "'tortious interference with prospective economic advantage'") (quoting Booz-Allen & Hamilton, Inc., 280 F.3d 209, 214 (2d Cir. 2004))

In New York, a claim of tortious interference with prospective business relations requires a showing of: "(1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair or improper means; and (4) injury to the business relationship." Nadel v. Play-by-Play Toys & Novelties, Inc., 208 F.3d 368, 382 (2d Cir. 2000). A tortious interference with prospective business relations claim does not require Plaintiff to plead a breach of contract, as breach is not an element of that claim. Counsel did not need to press the issue of breach to make out a claim under the earlier contract, and only needed to plead some sort of business relationship. Pleading tortious interference with contractual relations does not require contradictory facts, but simply additional facts, as that claim requires not just business relations, but contractual ones. Moreover, the issue with the allegations in the original

---

contract to prevail. See dkt. # 28-3 at 9-10. The discussion centered around whether Plaintiff had adequately alleged tortious conduct, acting with dishonest intent and using unfair and improper means. Id. at 10-11. Such discussion focused on the most important issue, as "[i]n order to prevail on a claim of tortious interference with prospective contractual relations a plaintiff must establish that the defendant interfered with 'business relations existing between plaintiff and a third party, *either* with the sole purpose of harming the plaintiff *or* by means that are dishonest, unfair or in any other way improper.'" Italian & French Wine Co. v. Negociants U.S.A., 842 F.Supp. 693, 701 (W.D.N.Y. 1993) (quoting PPX Enterprises v. Audio Fidelity Enterprises, 818 F.2d 266, 269 (2d Cir. 1987)). "If the defendant's interference is intended, 'at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct.'" Id. (quoting PPX Enterprises, 818 F.2d at 269)).

Complaint identified by Judge Sullivan had to do with whether Plaintiff had properly pled tortious conduct by the Defendants. The pleading requirement is different for the claim pled as Count One in the original Complaint than for the claim pled as Count One in the Amended Complaint.[2]

Nevertheless, Defendants argue that the Court must accept certain statements made by Plaintiff's counsel at the conference and conclude that Plaintiff has admitted that no breach of contract by ImageLevel occurred. For this proposition, Defendants cite to Colliton v. Cravath, Swaine & Moore LLP, No. 08cv400, 2008 U.S. Dist. LEXIS 74388 (S.D.N.Y. Sept. 24, 2008). In Colliton, a disbarred attorney sued his former law firm, alleging in part that the firm breached the parties' employment contract by failing to pay promised bonuses. Id. at * 4-5. Plaintiff lost his job with the law firm after his arrest for statutory rape and patronizing a prostitute. Id. at * 7. The defendant argued that plaintiff could not prevail on his contract claims because his "failure to disclose his criminal behavior at the time he was hired constitute[d] fraud, given his ethical duties as an attorney," and New York law permits a party to "unilaterally rescind a contract that was induced by fraud." id. at * 12. In response to this argument, which defendant raised "in a pre-motion letter to [the] Court," plaintiff, proceeding *pro se,* filed an amended complaint that altered the facts alleged in the original complaint to report that most of his time was spent in non-attorney activities and that he had breached no ethical duty required of lawyers. Id. at *18. The court found this amendment "a transparent attempt by plaintiff to amend his pleading in order to avoid a dispositive

---

[2]See footnote 1 above.

defense raised by" defendant. Id. at * 19. Under circumstances where "a 'plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts the facts set forth in the original complaint,' a court is authorized 'to accept the facts described in the original complaint as true.'" Id. at *19 (quoting Wallace v. New York City Dep't of Corr, No. 95 Civ. 4404, 1996 U.S. Dist. LEXIS 22368 (E.D.N.Y. Oct. 9, 1996)). The Court also imposed sanctions pursuant to Federal Rule of Civil Procedure 11, finding that plaintiff had amended his original, verified complaint "in a transparent attempt to plead around the legal defenses presented by Cravath in its pre-motion letter to" the court. Id. at * 37. The Court found that plaintiff had "'concocted'" facts in order to avoid a defense, and that this justified sanctions. Id. at * 38 (quoting Levine v F.D.I.C., 2 F.3d 476, 479 (2d Cir. 1993)).

This case is different. Plaintiff's Amended Complaint does not plead any blatantly contradictory facts in order to avoid a legitimate defense to a claim raised by the Defendants. Instead, Plaintiff's Amended Complaint relies on essentially the same facts concerning the business relationships between the parties and ImageLevel and the conduct of the Defendants and then offers a new legal theory as to the source of Defendants' liability. Judge Sullivan's concern with the claims in the original Complaint appeared to have more to do with Plaintiff's pleading of the maliciousness of Defendants' conduct than with the existence of business relations in the case. Indeed, proving that ImageLevel breached the contract may actually add a complication not present in the interference-with-prospective relations claim. Plaintiff did not attempt to change the facts to avoid a weakness in the original Complaint by insisting that a

breach of contract occured and counsel's statement to the formerly presiding Judge do not bind the Plaintiff to the claims in the original Complaint.

This case also does not present the same situation as Palm Beach Strategic Income v. Stanley P. Salzman, 2011 U.S. Dist. LEXIS 46867 (E.D.N.Y. May 2, 2011), also cited by the Defendants. In that case, a court had dismissed a second amended complaint in a diversity action, finding that Plaintiff had not properly pled diversity. Id. at *5. Rather than re-plead diversity, the plaintiff filed a new action that alleged RICO violations, invoked federal subject-matter jurisdiction and named new defendants. Id. The Court noted that plaintiff "devised, after three years of litigation and three prior complaints, that its breach of contract and negligence claims were really RICO violations that entitled it to assert federal question jurisdiction." Id. The Court found that this new action "appeared, on its surface, as nothing more than a transparent attempt to evade the Court's prior orders and to manufacture subject matter jurisdiction." Id. at *7. The Court had earlier granted a motion to dismiss without prejudice, finding that plaintiff lacked standing to enforce the contract that was at the heart of the parties' dispute. Id. at *9. Rather than seeking to cure any deficiency in the previous complaint, however, the amended complaint instead "allege[d] breach of an entirely different underlying contract" which had been "attached to the original" complaint "but disregarded in three subsequent complaints[.]" Id. at *10. The amended complaint did not attempt "to explain this striking discrepancy." Id. at *11. Instead, the plaintiff simply argued that the Court should ignore the previous pleadings and evaluate the amended complaint in the second action, since "'[a]n amended pleading supersedes prior pleadings and the prior pleadings are of no legal effect.'" Id. at *14.

The court found that "in a typical case, a prior inconsistent pleading should not trump the Court's obligation under Rule 12(b)(6) to accept a complaint's allegations as true." Id. at *17. Contradictions may be acceptable, for instance, in those instances where "a plaintiff may acquire new information through discovery, or its own investigation, that fundamentally alters its theory of the case." Id. at *17-18. The facts of the case, however, led the court to a different conclusion. Id. at *18. Plaintiff changed its theory only after two years of litigation, and after drafting three complaints and opposing a motion to dismiss. Id. Moreover, the court had granted a motion to dismiss based on plaintiff's factual representations, which the amended complaint contradicted; this created "estoppel problems." Id. In addition, the plaintiff's behavior in the litigation and retention of respected counsel also made clear to the court that plaintiff had strategically manipulated the facts in an attempt to avoid judgment. Id. at *20-21.

Plaintiff's conduct in Palm Beach Strategic Income represented an attempt to avoid the pleading rules and manipulate the requirements of jurisdiction by ignoring the facts and claims pled in earlier complaints. The court, while recognizing the right of a plaintiff to file an amended that contradicted a previous one, rejected this obvious attempt to manipulate the facts and avoid the legal consequences created by the previous action. Defendants' attempt to equate a statement by counsel made in a preliminary proceeding with such egregious conduct is unpersuasive. Nothing in Plaintiff's litigation of this matter counsels the same result. The Court will deny the motion in this respect too.

### ii. Defendants' Conduct

Defendants next argue that, even if Plaintiff had pled a breach of contract,

14

Plaintiff has not properly alleged that Defendants intentionally procured that breach, or that Defendants' conduct was the "but for" cause of the breach. Instead, Defendants insist, Plaintiff has merely alleged that Defendant's conduct led to a breach. Such allegations, Defendants claim, are insufficient to support a tortious interference claim.

In a tortious interference claim "a defendant must induce or intentionally procure a third-party's breach of its contract with the plaintiff and not merely have knowledge of its existence." Beecher v. Feldstein, 8 A.D.3d 597, 598, 780 N.Y.S. 2d 153, 154 (2d Dept. 2004); see also, 24/7 Records, Inc. v. Sony Music Entm't, Inc., 429 F.3d 39, 47 (2d Cir. 2005) ("tortious interference claim requires proof that the defendant intentionally procured the breach of contract"). This element requires a showing that "'there would not have been a breach but for the activities of defendants.'" Watts v. Jackson Hewitt Tax Serv., 675 F.Supp.2d 274, 282 (E.D.N.Y. 2009) (quoting Innovative Networks, Inc. v. Young, 978 F.Supp. 167, 180 (S.D.N.Y. 1997)); see also, Ferrandino & Son, Inc. v. Wheaton Bldrs., Inc., LLC, 82 A.D.3d 1035, 1036, 920 N.Y.S. 2d 123, 125 (2d Dept. 2011) (plaintiff must allege that breach would not have occurred but for defendants' conduct). Still, "[t]he key inquiry ordinarily . . . is whether the interference was 'without reasonable justification' or, put differently, was 'improper.'" Jews for Jesus, Inc. v. Jewish Community Relations Counsel, 968 F.2d 286, 292 (2d Cir. 1992) (quoting Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 189-90, 428 N.Y.S.2d 628 (1980)). In determining whether interference was justified, courts may look to factors such as: "the nature of the defendant's conduct, the defendant's motive, the interests of the plaintiff with which the defendant interferes, the interests defendant seeks to advance, the social interests at stake, the proximity of the defendant's conduct

to the interference, and the relations between the parties." Id.  Such allegations must contain sufficient factual content to "warrant future proceedings," and mere conclusory allegations of tortious conduct do not suffice.  ECOR Solutions, Inc. v. Malcolm Pirnie, Inc., No. 02cv1103, 2005 U.S. Dist. LEXIS at *10 (N.D.N.Y. July 29, 2005).

Plaintiff insists that the allegations in the Amended Complaint are sufficiently specific to support a claim of tortious interference.  Plaintiff points to allegations that Defendants, who knew that Plaintiff had exclusive rights to the product in North America, were dissatisfied with the price the Plaintiff charged.  Plaintiff also alleges that ImageLevel and the Defendants had attempted to get around this exclusive right and that Defendants had threatened not to purchase the product because of the high price.  Instead, Plaintiff alleges, Defendants threatened to purchase the system from a competitor unless ImageLevel sold it directly to them.  ImageLevel eventually sold the system directly to Defendants, ignoring the exclusivity contained in the contract between Plaintiff and ImageLevel.  Plaintiff contends that these allegations permit the Court to infer "that Defendants attempted, by improper means, to obtain the Product and System from ImageLevel directly at a lower price, resulting in ImageLevel's breach of the agreement."  Plaintiff's Brief, dkt. # 29 at 8.

Making all inferences in the Plaintiff's favor, the Court concludes that Plaintiff has alleged facts sufficient to plausibly infer that Defendants engaged in improper behavior that Defendants knew would induce ImageLevel to breach the company's contract with Plaintiff.  "'An actor intentionally procures a breach of a third party's contract even where the breach is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action.'" Bertuglia v. City of New York, 839

16

F.Supp.2d 703, 729 (2012) (quoting St. John's Univ. v. Bolton, 757 F.Supp.2d 144, 173 (E.D.N.Y. 2010) (internal quotation marks omitted)). The Court reads the Complaint to allege that Defendants, who purchased a considerable number of the Systems that Plaintiff sold, used their influence with ImageLevel to demand lower prices and convince the company to breach its contract with Plaintiff and sell Systems directly to Defendants. Defendants, according to the Amended Complaint, were aware of the contractual relationship between ImageLevel and the Plaintiff. Even if Defendants had a legitimate purpose in securing lower prices, Defendants had to know that seeking the system directly from ImageLevel would have the result of breaching the contract. Defendants therefore induced ImageLevel to cut out Plaintiff and sell directly to Defendants. Without Defendants' threats, ImageLevel would have had no cause to breach the contract, as Defendants would have purchased the system through the Plaintiff, likewise benefitting ImageLevel. Using the standard articulated by the Defendants, their conduct was the "but-for" cause of ImageLevel's conduct, and Plaintiff has alleged that Defendants procured ImageLevel's breach. Highland Capital Mgmt. LP v. Schneider, 198 Fed. Appx. 41, 46 (2d Cir. 2006) (tortious interference occurs when defendant "prevailed upon" contracting party to breach). The motion will be denied in this respect as well.

### B. Declaratory and Injunctive Relief

Defendants next argue that Plaintiff's claims for declaratory and injunctive relief must be dismissed. Defendants' argument here is premised on Plaintiff's alleged failure to state a claim for tortious interference with a contract. Defendants argue that

17

"because Plaintiff failed to allege any viable claims, its claim for declaratory and injunctive relief must fail as well." The Court has determined that Plaintiff has stated a claim for tortious interference with a contract. Since the basis of Defendants' motion with respect to these claims does not apply, the Court will deny the motion in reference to these claims as well.

### C. Unjust Enrichment and Conversion

Defendants also seek dismissal of Plaintiff's unjust enrichment and conversion claims. Plaintiff does not oppose this portion of Defendants' motion. The Court will therefore grant the motion as to these claims as unopposed.

## IV. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss the Complaint, dkt. # 28, will be GRANTED IN PART and DENIED IN PART, as follows:

1. The motion will be GRANTED with respect to Plaintiff's claims for unjust enrichment and conversion; and
2. The motion will be DENIED in all other respects.

.

IT IS SO ORDERED

Dated: October 14, 2015

_____
Thomas J. McAvoy
Senior, U.S. District Judge